# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| LUCIA SALVATI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 18-11289-FDS |
| v. | ) | |
| | ) | |
| FIREMAN'S FUND INSURANCE COMPANY d/b/a THE AMERICAN INSURANCE COMPANY and ALLIANZ GLOBAL RISKS UNITED STATES INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER
## ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is an insurance dispute that arises from the tragic death of Gerardo Salvati. Plaintiff Lucia Salvati, Mr. Salvati's wife and the executor of his estate, seeks to recover $5 million she alleges she is owed under an excess liability insurance policy issued by the American Insurance Company ("AIC").[1] Jurisdiction is based on diversity of citizenship.

Defendants have moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss will be granted.

---

[1] The suit names the following defendants: "Fireman's Fund Insurance Company d/b/a The American Insurance Company" and "Allianz Global Risks United States Insurance Company." Fireman's Fund Insurance Company and Allianz Global Risks United States Insurance Company are AIC's parent companies. For the sake of convenience, the defendants will be referred to as "AIC."

I.      **Background**

The facts are taken from the amended complaint and earlier court opinions.

Gerardo Salvati worked for Ajax Management Partners, LLC. *Salvati v. American Insurance Co.*, 855 F.3d 40, 42 (1st Cir. 2017). On June 17, 2010, at the direction of his supervisor, Mr. Salvati climbed a ladder to inspect the façade of the Lovejoy Wharf building in Boston. *Id.* During the inspection, a large chunk of brickwork fell from the building and crashed into Mr. Salvati, causing him to fall to his death. *Id.*

In September 2011, Lucia Salvati ("Salvati"), Mr. Salvati's wife and the executor of his estate, filed a wrongful-death lawsuit in Suffolk County Superior Court against Mr. Salvati's supervisor, Robert Easton, and a group of limited liability companies that owned the Lovejoy Wharf building. *Id.*

Easton and the LLCs had two insurance policies: a $1 million primary policy through Western World Insurance Company and a $9 million excess policy through AIC. *Id.* at 42-43. The excess policy agreement called upon AIC to "pay on behalf of any Insured those sums in excess of the Primary Insurance that any Insured becomes legally obligated to pay as damages." *Id.* at 45.

After an unsuccessful attempt at mediation, Salvati ultimately reached a settlement agreement with Easton and the LLCs in December 2014. *Id.* at 43. The settlement agreement "ha[d] three key elements." *Id.* First, the agreement "provided for the total payment of $6,000,000 to Salvati." *Id.* Second, the agreement "released [] Western World, [Easton, and the LLCs,] from any further liability" in exchange for them "tendering the full $1 million of the Western World primary insurance policy" to Salvati. *Id.* Third, the agreement "assigned all rights previously held by [Easton and the LLCs] against AIC" to Salvati, which allowed her "to

seek recovery of the remaining $5 million from" AIC's excess policy. *Id.* Although Salvati was assigned these rights, the agreement also specifically stipulated "that the settlement was not contingent on the ultimate availability of the excess coverage [] and specified that [Easton and the LLCs] did not represent that excess coverage was necessarily available." *Id.*

On December 29, 2014, the Superior Court approved the settlement agreement and dismissed Salvati's suit with prejudice and without entering a judgment against Easton and the LLCs. AIC, however, declined to defend or indemnify Easton and the LLCs. In its view, the excess policy "did not apply to liability stemming from any injury to an employee of the insured party during the course of his employment." *Salvati v. American Insurance Company*, 2016 WL 9049596 at *1 (D. Mass. Mar. 15, 2016).

In April 2015, Salvati, acting as the assignee of Easton and the LLCs, filed a complaint against AIC in the Superior Court. The complaint raised two claims: (1) a breach-of-contract claim alleging that AIC had breached the excess policy agreement by failing to indemnify Easton and the LLCs and (2) a declaratory-judgment claim seeking a "decree[] that [defendants] [were] compelled to perform under the [excess policy agreement] in the amount of $5,000,000."

AIC removed the case to this court in August 2015. In October 2015, Salvati filed an amended complaint that added four claims: a count alleging a violation of Mass. Gen. Laws ch. 93A; a count alleging a violation of Mass. Gen. Laws ch. 176D; and two counts of professional negligence. AIC then filed a motion to dismiss.

The district court (Zobel, J.) granted the motion to dismiss in full. *Id.* As to Salvati's contention that AIC had breached the excess policy agreement, Judge Zobel held that pursuant to the agreement's terms, AIC's duty to indemnify could only be triggered once Easton or the LLCs "bec[ame] legally obligated to pay" damages to Salvati. *Salvati*, 855 F.3d at 44. Because the

3

Superior Court had dismissed her suit against Easton and the LLCs with prejudice and without having entered a judgment against the defendants, Judge Zobel concluded that "there [had] never [been] any legal determination of liability." *Id.* at 45. Accordingly, Judge Zobel concluded that AIC was not bound to pay Salvati the $5 million.[2]

Salvati appealed. On April 26, 2017, the First Circuit affirmed, but on somewhat different grounds. Judge Zobel's holding relied on the conclusion that only a judgment can "legally obligate[]" a party to pay damages. The First Circuit, however, held that such obligation can also arise from a "settlement agreement that is wholly contractual in nature." *Id.* The First Circuit, however, also concluded that the plain language of the December 2014 agreement, although it created a settlement in the amount of $6 million, only required the actual payment of $1 million from Western World. *Id.* at 47. The "remaining value" of the settlement, the court concluded, was "attributed to the assignment to Salvati of all rights [Easton and the LLCs] may have" had under the excess policy. *Id.* That language, the court concluded, did not legally obligate Easton or the LLCs to pay anything beyond $1 million, and accordingly did not "trigger AIC's duty to indemnify." *Id.*

The plain language of the settlement agreement, coupled with Salvati's "failure to explain how the [s]ettlement [a]greement triggered the [e]xcess [p]olicy's indemnification provision," left the court "without a rationale for finding that AIC's refusal to indemnify constituted a breach" of the excess policy. *Id.* at 48. Accordingly, it affirmed the dismissal.

The First Circuit noted that the "outcome [had] not [been] inevitable," and that a "settlement structured differently could have" triggered the excess policy by creating a legal obligation on the part of Easton and the LLCs. *Id.* Although the court acknowledged that the

---

[2] Judge Zobel dismissed four of the remaining claims for largely the same reason. The remaining claim, which arose under § 176D, was dismissed because that statute provides no private cause of action.

4

difference between such a settlement and the actual 2014 settlement may have "seem[ed] technical," and that the court's "adherence to the terms" of the excess policy may have "seem[ed] unforgiving," the court concluded that it could not "rewrite" either the settlement agreement or the excess policy. *Id.* at 49.

In December 2017, Salvati returned to Superior Court and filed an "Unopposed Motion to Remove Stipulation of Dismissal and Enter an Agreement for Judgment in Favor of the Plaintiff" along with a corresponding "Agreement for Judgment" on the docket of her 2011 wrongful death action.[3] Both documents were signed by her attorney and by an attorney representing Easton, the LLCs, and various other "defendants," but not AIC.

The "Agreement for Judgment" is largely identical to the 2014 settlement agreement, with two changes: (1) it deletes references to Western World's payment under the primary policy and the stipulation of dismissal and (2) it adds the following sentence to the preamble: "WHEREAS, it is the express intention of the parties to create a legally binding obligation on the part of the Defendants to settle/pay Salvati's claim."

On January 3, 2018, the Superior Court allowed the motion and vacated the stipulation of dismissal. On January 8, the court entered judgment in favor of Salvati.

On May 18, 2018, Salvati filed this action against AIC (and its parent companies) in the Superior Court. AIC removed the action to this court on June 20, 2018.

On July 17, 2018, Salvati filed an amended complaint. The amended complaint alleges that AIC breached the excess policy agreement and seeks a declaratory judgment "that [AIC is] compelled to perform under the [agreement] in the amount of $5,000,000."

---

[3] The amended complaint states that Salvati filed the documents on December 13, 2018. The motion to dismiss filed by AIC at times refers to the documents as being filed in December 2017 and at times as being filed in December 2018. Exhibit 2 to the motion to dismiss, which appears to be a copy of the docket in the wrongful death action, indicates that the documents were filed on December 18, 2017.

5

AIC has moved to dismiss the amended complaint for failure to state a claim, contending both that the suit is barred by the doctrine of claim preclusion and that the "Agreement for Judgment" does not "obligate any of AIC's insureds to pay damages to [Salvati] in excess of the $1 million paid in 2014."

## II. Analysis

### A. Choice of Law

The first question is whether Massachusetts or federal law of claim preclusion should apply.[4]

Federal courts sitting in diversity are to apply "the law that would be applied by state courts in the State in which [it] sits" in all situations other than those "in which the state law is incompatible with federal interests." *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001). The First Circuit has interpreted *Semtek* to "apply[] in successive diversity actions," as is the case here. *Hatch v. Trail King Industries, Inc.*, 699 F.3d 38, (1st Cir. 2012). Accordingly, and because there is no indication that the Massachusetts law of claim preclusion is incompatible with federal interests, the court will apply the law that a Massachusetts court would apply.

Determining what law a Massachusetts court would apply, however, is not straightforward. In an opinion predating *Semtek*, the Supreme Judicial Court stated that "[w]hen a State court is faced with the issue of determining the preclusive effect of a Federal court's judgment, it is the Federal law of res judicata which must be examined." *Anderson v. Phoenix Investment Counsel of Boston, Inc.*, 387 Mass. 444, 449 (1982). But the "SJC has not clarified the [*Anderson*] rule in light of *Semtek*, and it is unclear that such a rule survives the *Semtek*

---

[4] The parties did not address the choice of law issue. Salvati almost exclusively cites federal cases, while AIC cites to both Massachusetts and federal cases.

6

decision." *Hatch*, 699 F.3d at 44-45.

In any event, "both Massachusetts law and federal common law apply the same analytical factors in deciding claim preclusion questions." *Herman v. Meiselman*, 541 F.3d 59, 62 n.6 (1st Cir. 2008). In light of the lack of apparent difference between the two laws, and the fact that the SJC has not yet revisited *Anderson*, the Court will apply federal law of claim preclusion here.

### B. Claim Preclusion

The doctrine of claim preclusion, or *res judicata*, prohibits parties from contesting issues that they have had a "full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010). To establish claim preclusion, a party must show that three elements have been satisfied: "(1) [an] earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Id.*

#### 1. Prior Final Judgment on the Merits

The first element is whether the earlier suit resulted in a final judgment on the merits. Dismissals under Rule 12(b)(6) that dispose of an entire complaint are considered "final judgments on the merits" for the purposes of claim preclusion. *See, e.g., United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("It is well settled in this circuit that dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is a final decision on the merits."), *vacated on other grounds*, 913 F.3d 178; *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016) (citing *Karvelas* approvingly).

Because the dismissal of plaintiff's first action disposed of the entire original complaint,

7

it constitutes a "final judgment on the merits." *See Salvati v. American Insurance Co.*, 2016 WL 9049596 (D. Mass. Mar. 15, 2016). Accordingly, the first element of claim preclusion is clearly satisfied.

### 2. Identical or Related Claims

The second element is whether the claims raised in this action are "sufficiently identical or related" to the claims raised in the first action.

The First Circuit uses the transactional approach of the Restatement (Second) of Judgments to answer that question. *Airframe*, 601 F.3d at 15. Under the transactional approach, the essential inquiry is whether "the causes of action arise out of a common nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc., v. Am. Bar. Ass'n,* 142 F.3d 26, 38 (1st Cir. 1998). "What factual grouping constitutes a 'transaction' . . . [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether treating them as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24; *see In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001).

In substance, the only new facts alleged in this action concern the modified settlement agreement that plaintiff executed in 2017. The question, therefore, is whether the modification of the settlement agreement, as the only new "fact," renders the claims of the present action sufficiently dissimilar from the claims of the original action to survive claim preclusion.

The Court has not been able to find any authority squarely addressing the issue presented here. It will start, therefore, with some basic principles.

First, as a general proposition, parties are not permitted to engage in claim-splitting: that is, parties are generally not permitted to bring new actions based on claims that could have been

8

asserted in the earlier action, but were not. *See Airframe*, 601 F.3d at 11 (holding that a software development company whose original action had alleged infringement of its copyright through defendants' *possession* of its source code was barred from bringing a later action that alleged copyright infringement based on the *use* of its source code).

Second, the rule against claim-splitting is subject to certain exceptions. *See generally* Restatement (Second) of Judgments § 26. Among other exceptions, the rule does not apply where the defendant has committed fraud on the plaintiff by concealing evidence, or where the evidence on which the second action is based was not reasonably discoverable during the pendency of the first action. *See Havercombe v. Dep't of Educ. of the Commonwealth of P.R.*, 250 F.3d 1, 8 n.9 (1st Cir. 2001); *Marrapese v. State of Rhode Island*, 749 F.2d 934, 944 (1st Cir. 1984).

Third, claim preclusion may apply even where the new action involves new facts or new evidence not presented in the initial action. *See* Restatement (Second) of Judgments § 25 (providing that the rule "applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action . . . to present evidence . . . not presented in the first action." On at least one occasion, the First Circuit has held that claim preclusion applied when the new action simply alleged that the wrongful conduct in the first action continued to occur. *See Havercombe*, 250 F.3d at 3 (holding that a second action was barred by claim preclusion because the new action effectively only alleged that the discriminatory conduct for which defendants were originally held liable "went on for two more years," and noting that "nothing in particular" was identified by the plaintiff "as having taken place" after the date of the defendants' conduct in question during the original case).

Fourth, "[t]he doctrine of claim preclusion serves at least two important interests:

protecting litigants against gamesmanship and the added litigation costs of claim-splitting, and preventing scarce judicial resources from being squandered in unnecessary litigation." *Airframe*, 601 F.3d at 14. The First Circuit in *Airframe* noted that the plaintiff in that case "had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Id.*; *see Hatch*, 699 F.3d at 45 (noting that the "claim preclusion doctrine requires [a party] to live with [its strategic] choices," including "whether to attempt to amend a complaint and whether to appeal a denial of such an attempt.") (quoting *Airframe*, 601 F.3d at 11).

Although this case does not fit neatly within existing case law, together those principles provide substantial guidance for its resolution. Here, the evidence in question (the new settlement agreement) did not exist at the time of the first action. As a technical matter, therefore, plaintiff could not have raised any claims in the first action based on that agreement. But the new settlement agreement is not new "evidence," in any ordinary sense of the word. It was not something that was hidden from plaintiff, or that could not have been discovered with the exercise of reasonable diligence. Rather, the settlement agreement was something that plaintiff helped to create. Put another way, the first agreement was essentially the product of a litigation choice made by counsel (that is, to structure the settlement in a particular way), and the second agreement was the product of a new choice (that is, to recast the settlement in light of the First Circuit opinion). At all times, the power to shape that agreement was in plaintiff's control.

Thus, at heart, this case involves the consequences of a strategic litigation choice—a decision to enter into a settlement agreement that failed to "trigger AIC's duty to indemnify because it did not legally obligate [Easton and the LLCs] to pay anything beyond the $1 million available through [the] primary policy." *Salvati*, 855 F.3d at 47. It is true, of course, that

plaintiff did not have the benefit of the First Circuit's ruling at the time of the settlement, and therefore had to anticipate how the agreement should be structured to avoid potential challenges. But the court's ruling was hardly unforeseeable. The original settlement was structured so that plaintiff could attempt to require the excess carrier to pay out $5 million, even though the insureds themselves had no obligation (by judgment or contract) to pay that amount. It was surely foreseeable that the excess carrier would take the position that the duty to indemnify had not been triggered under such an arrangement. There is no obvious reason why the parties could not have structured the settlement to reflect that possibility. And it is likewise difficult to see why it would be entirely unfair to require plaintiff to live with the consequences of her strategic choices.

Plaintiff contends that "[t]he facts in this case revolve around completely new documentation that adheres to the parties['] original intent and the procedure advocated as enforceable by the [the First Circuit's opinion in the first action]." (Pl. Opp. at 9). It is true that the First Circuit opined—in *dicta*, of course—that the plaintiff and the underlying defendants "could have" structured a settlement differently to "me[e]t the requirements" necessary to trigger the excess policy. That statement, however, is merely an observation of what plaintiff could have done in the past, not a ruling that plaintiff was free to bring a second action on a new agreement.

Plaintiff further contends that the First Circuit's statement that "[a] settlement structured differently could have met the requirements of the Excess Policy" provided her with the "right" to "reform[]" the underlying settlement. (*Id.* at 7). Again, the question here is not whether she was free to reform the underlying settlement agreement; it is whether after doing so, she can bring a new legal action asserting claims against AIC that she has already brought in a previous

11

action.

In short, plaintiff had a fair opportunity to negotiate and enter into a settlement agreement, and she chose to accept an agreement with a particular structure. She then had a fair opportunity to litigate the consequences of that agreement. The facts underlying the second action are identical to those in the first action, except for the modification of the settlement agreement. That is not new "evidence," but a new voluntary agreement that had always been within plaintiff's control to effect. Under the circumstances, the claims in the second action are sufficiently related to those in the first action to trigger principles of claim preclusion.

### 3. The Parties in the Two Suits Are Sufficiently Identical or Closely Related

Finally, the third element of claim preclusion is whether the defendants in this suit are "sufficiently identical or closely related" to the defendant in plaintiff's first suit.

Plaintiff's first action was brought against one defendant, The American Insurance Company. The present action is against two defendants, Fireman's Fund Insurance Company d/b/a The American Insurance Company and Allianz Global Risks United States Insurance Company.

AIC contends, and plaintiff does not dispute, that the named defendants in this action are AIC's parent companies. It further contends that Fireman's Fund Insurance Company owns 100% of the common stock of AIC, and that Allianz Global owns 100% of the common stock of Fireman's Fund. The question, therefore, is whether AIC is "sufficiently identical or closely related" with its two parent companies.

"Whether . . . an original defendant and a defendant only named in a later suit" may be deemed closely related "varies with the facts" of each case. *Airframe*, 601 F.3d at 17. The "common factor" in cases where new defendants have successfully asserted claim preclusion is

when the "[later] claims were or could have been brought against the original defendant in the original suit and the subsequent suit trie[s] to hold related defendants liable on related claims." *Id.* at 17-18. This case fits that mold precisely—the exact claims now raised against AIC's parent companies have already been brought against AIC in the original action.

In addition, although the First Circuit has not addressed the question directly, "[o]ther [courts] have recognized that" a "parent corporation and a subsequently sued affiliate" are sufficiently closely related for claim preclusion purposes. *Airframe*, 601 F.3d at 17 (citing *Lubrizol Corp v. Exxon Corp.*, 929 F.3d 960, 966 (3d Cir. 1991)); *see also Lufti v. Dow Jones*, 1996 WL 343065 at *2 (S.D.N.Y. June 20, 1996) (concluding that parent and subsidiary company were "sufficiently closely related" for purposes of claim preclusion).

Finally, plaintiff offers no indication that AIC's parent companies are not closely related to AIC. Instead, she appears to contend that because the modified settlement agreement was signed by "entities who were not parties to" her earlier action, "new parties" who are not closely related to AIC "are at issue in this case." That contention, however, misapprehends the necessary inquiry here. The question is not whether the parties are identical, but whether "the parties in the two suits are sufficiently identical or closely related." *Airframe*, 601 F.3d at 14. The only "parties" involved in this suit remain AIC's parent companies, both of which are sufficiently closely related to AIC for the purposes of claim preclusion.

### 4. <u>Conclusion</u>

Because the requirements of claim preclusion are met, the doctrine bars plaintiff's claims in this action. The Court does not reach AIC's contention that the modified settlement agreement failed to trigger the excess policy.

## III.    Conclusion

For the foregoing reasons, defendants' motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  March 1, 2019                           United States District Judge